# IN THE COURT OF APPEALS OF IOWA

No. 15-0138
Filed December 9, 2015

IN RE THE MARRIAGE OF RACHELLE WHEATCRAFT
AND WILLIAM WHEATCRAFT

Upon the Petition of
RACHELLE WHEATCRAFT,
        Petitioner-Appellee,

And Concerning
WILLIAM WHEATCRAFT,
        Respondent-Appellant.

_____

        Appeal from the Iowa District Court for Woodbury County, Patrick H. Tott,

Judge.


        William Wheatcraft appeals a district court order modifying the parties'

dissolution decree.  **AFFIRMED.**


        John S. Moeller of John S. Moeller, P.C., Sioux City, for appellant.

        Jacquelyn S. Johnson of Vonnahme Law, P.C., Sioux City, for appellee.


        Considered by Vaitheswaran, P.J., and Potterfield and McDonald, JJ.

**VAITHESWARAN, Presiding Judge.**

William Wheatcraft appeals a ruling (1) modifying the physical care provision of a prior order to afford his ex-wife physical care of their children and (2) requiring him to pay child support.

## I. Background Facts and Proceedings

Rachelle and William Wheatcraft married in 2001 and divorced in 2009. Under a stipulated decree, the parents exercised joint physical care of their three children. The decree was later modified to grant William physical care of the children.

In 2013, Rachelle informally reassumed a primary caretaking role. In time, she applied for a modification of the prior order to award her physical care and child support. Following a hearing, the district court granted Rachelle physical care of the children and ordered William to pay $1070 per month in child support. William filed a post-trial motion seeking a redetermination of his child support obligation. The district court denied the motion. William appealed.

## II. Analysis

### 1. Physical Care

A party seeking a modification of physical care must establish (1) a substantial and material change of circumstances that is more or less permanent and affects the children's welfare and (2) an ability to provide superior care. *In re Marriage of Frederici*, 338 N.W.2d 156, 158 (Iowa 1983). On our de novo review, we are persuaded Rachelle made these showings.

Rachelle assumed physical care of the children at least eleven months before the modification hearing. She testified that she ended up with physical care because of William's work schedule.

William conceded his schedule as a truck driver required him to work up to six days a week "anywhere from 6 to 7:30 in the mornings" to "anywhere from 8:30 at night to 10:30 at night." He testified, "[g]enerally I have been working 11 1/2, 12, 12 1/2, 13, sometimes 14, 14 1/2-hour-day[s]." During the five months preceding the modification hearing, William only saw the children five or six times. He exercised no overnight visits in the previous ten months.

William's living situation also was incompatible with a primary caretaking role. He lost his home and was staying in a camper in the yard of a friend's house. While he testified there would be room for his three children in the house, he conceded his friend had a wife and two children and he had not tested this option.

After considering William's circumstances, the district court concluded:

> Rachelle has met her burden of proof in this case. The children have been residing with her full-time for the last several months. For whatever reason, William has not attempted to enforce his custodial rights during that time. William has not been in a position to be able to do so due to losing his residence and living out of a camper for nearly the past year. While William asserts various concerns regarding Rachelle's parenting abilities there have been no reports to [the Department of Human Services] since the end of 2013. He has not had any overnight visits with the children since at least June [2014].
> Also there does not appear to be any significant chance that William's circumstances will change at any time in the foreseeable future. Even if he obtains the local route and his work hours end at 7 or 8 p.m., he still is living in a camper and did not provide any evidence or intention of finding a more suitable residence for him and the children.

We agree with the district court's assessment. There was no practical way William could exercise physical care of the three children. We affirm the district court's modification of the prior physical care ruling.

### 2. Child Support

William takes issue with the district court's calculation of his child support obligation and, specifically, the court's determination that he earned $40,495 annually. In his view, the court should have found his annual earnings to be $32,396.

In calculating child support, income "reasonably expected to be received should be included." *Markey v. Carney*, 705 N.W.2d 13, 19 (Iowa 2005). The district court based its income figure on William's testimony that he averaged two to three roundtrip drives per day and earned $62.30 per roundtrip. The court found that if William averaged two roundtrips, he would earn $32,396 and if he averaged three roundtrips, he would earn $48,594. The court adopted the average of these two figures and arrived at an annualized income of $40,495. This figure found greater support in the record than William's figure, which was based on far fewer hours than he generally worked. If anything, the court underestimated William's earnings. We affirm the child support obligation of $1070 per month.

**AFFIRMED.**